or call the next case. Mr. This case is people versus Murphy. Murphy's law. In any event, I'd like to begin to point out the obvious that the video tape, the officer's video tape from the squad car is the keystone of my appeal or our appeal, I should say. And I'd like to begin by pointing out some inconsistencies in Officer Brunze's testimony that was elicited in court. Officer Brunze on August 27, 2010, was traveling northbound on State Street, or excuse me, southbound on State Street, Illinois in the 300 block, when he notices a what he's testified to as a vehicle, a green pickup truck in the speedway gas station on State Street, as he passed by the speedway, the truck then traveled northbound on State Street, Officer Brunze made a U-turn and began to follow Murphy's vehicle. And he admitted that the cumulative effect of these inconsistencies are what's each one individually doesn't make, you know, much of a much of a dent. But he said that he saw Murphy's vehicle, first of all, in the speedway gas station. But in this police report, he said no, he saw Murphy's vehicle first was traveling northbound on State Street was the first inconsistency. He said he saw Murphy's vehicle travel in the northbound lane and straddle the lane for half a block in the 200 block of State Street. On his police report, he said it was the 100 block. Another inconsistency. Keep in mind that we're talking about a whole four city block area from the time from Fourth Street to Thornton, which Thornton would be first street in Lockport, but it's named Thornton. He said that the traveling the vehicle was in one half of the vehicle was in one lane, one half of the vehicles in the other lane. But if you look at the videotape, there's no indication at all that of any lane straddling by the identifies as Murphy's vehicle. He's 100% sure that the there was lane straddling, yet the video does not show any lane straddling. Brunsey declared he was unable to determine the speed of Murphy's vehicle. Yet later in the same hearing, he testifies that Oh, yeah, he was speeding and he made a quick turn on Thornton Street. The, the video, as I mentioned before, the videotape does shows Murphy, no lane straddling shows Murphy's vehicle slowing down to make a right hand turn on Thornton Avenue or Thornton Street using its traffic signal. Brunsey's own video does not corroborate any of his testimony. In fact, it contradicts his testimony. And there is no testimony emphasize that the video was defective or that it was inaccurate. There's no testimony that in fact, it is the police officer's video. Now, Judge Polito in viewing the video, he viewed it a number of times. If you looked at the record, he kept over and over playing the video. And he, he asked Murphy says, in viewing the video, Polito, Judge Polito, excuse me, indicated that he thought the vehicle turned on second street, which is the street just before Thornton. And he said, look, I turned on second, it's Thornton Street. And he said, Judge Polito asked Brunsey, where's Murphy's car? And Brunsey replied, this is this. Here he is in the right hand lane, sir. And I can see the violations from here. As he's looking at the video, he's looking at the videotape and say, I can see the violations. You look at the videotape. I didn't see any violations. And I asked, urged the panel to look at the video. So Murphy, excuse me, Brunsey's testimony is full of the conclusion I've submitted, because Brunsey is a, is not a truth teller in this, in this matter. Now the trial judge heard all this testimony. Yes. Conflicted about the video. Yes. But came to the conclusion that the burden wasn't met to suppress the evidence and made credibility determinations. I, you know, by the judge's conclusion, I don't believe he made credibility. Well, I mean, by implication. Well, by implication. Yeah. But what he said was he, we hadn't proved the, uh, the, the, the, the, the surprise we had approved, put enough evidence on to justify the motion to suppress, but he did not make, he did not look and say, you know, I'm conflicted by this video, but I'm believing the police officers when I tell him he never made any, any determination of that. And you can argue by implication that such was made, but there was no specific comment by judge Polito on that particular issue. And I made that point in my briefing. He asked, he asked a lot of questions about the, he certainly did. Uh, and so it, the questions would indicate there was a concern about, uh, the video was consistent or not consistent, um, with the testimony. Well, here's, here's the, here's the crux of the matter. If I may address, I was, I'm a little ahead of myself with your questions, but I'll, I'll, I was going to break this point. Is that judge Polito initially denied the motion, uh, for directed verdict by the state, initially denied it. And the implication there being Justice Carter is that he found that there was no probable cause at that particular time that we approved in a prima facie case that the stop was unconstitutional at that particular time. Then he continues the matter over for, uh, um, McDaniel to testify. McDaniel doesn't add anything to the testimony. McDaniel and I submit to you is basically aping Brunsey's testimony. McDaniel never wrote a report. McDaniel, uh, was not involved in the arrest originally. So we have the two standards of proof here, and then this is where I want to get to judge Polito, because this is where I believe that he made the mistake and hopefully this will, he'll agree with me. The, we have the probable cause burden of proof, probable cause of the fourth amendment, reasonable belief that a crime has been committed or about to be committed. We also have the Terry standard, which is reasonable, uh, suspicious, articulable facts justifying a reasonable suspicion. Now, as I read the evidence, I read the case, and what I'm arguing here to this court is, is that judge Polito decided to deny the state's motion for direct verdict based on probable cause. Then when McDaniel testified, I'm submitting he didn't add anything to it. Then he says, well, I'm conflicted by the video. I'm confused. And it's a Terry stop anyhow. Now I'm submitted to you that judge Polito was wrong about that. It's not a Terry stop. It's clear from the evidence that Brunsey says I stopped him for improper lane usage for his family lane. He says that on the record. And it's quite clear that that's the reason he stopped him. Now a Terry stop I'm submitting to you would be the effect of he sees Murphy leaving the gas station. At that particular time, he doesn't have any articulable suspicions, circumstances justify a Terry stop. He only stops the vehicle when he claims that he observed the lane violations. That's probable cause. It's not a Terry stop. I'm submitting to you that a Terry stop is the type of situation where I'm going to give you a hypothetical. There's a car late at night driving around an industrial area real slow with a couple of people in it looking suspicious like and there's been a number of burglaries in this area. That justifies a police officer stopping a car at a Terry stop. We don't have a Terry stop here. Yet judge Polito justifies or denies the motion to express. He says he basically says it's a Terry stop. That's what I'm submitting to you. And that's where the error lies. Because I'm submitting that he was right the first time. There was no probable cause. But he's wrong the second time. He can't justify the same facts. That's true. And he cited the Terry stop. Terry reasonable articulable suspicions. So I'm submitting to you that that's that's the crux of the matter. Yes. For the purposes of the motion for a directed finding though the judge has to presume that the evidence presented by your client is to view that in light most favorable to your client. Right. So that really means nothing with respect to the ultimate determination of when he no longer has to presume or view that evidence in light most favorable. Explain to me why that ruling is of significance on the directed finding. Well it's a entirely different evaluation the court conducts at the conclusion of all the evidence. If the state doesn't present any other evidence at that particular time I would presume that judge Polito would have granted the motion. The state presented additional evidence which didn't didn't vary the evidence that was before him. And I'm submitting to you that that he should have he should have granted the motion based on probable cause. But I really don't think probable cause or Terry's that really makes the difference. What makes the difference is the videotape. The videotape just does not corroborate the police officers. It's their videotape and it's not said to be inaccurate or defective or anything. And if you look at the videotape to me and I'm submitting to the panel it's quite obvious that I was going to say Judge Brunzee but Officer Brunzee is not on the square. And that the animus is there to arrest Murphy. He knew Murphy from before and he was going to arrest him come hell or high water. And he did. And he did not have what I submit is constitutional basis for that to arrest that person. And I'm submitting that that is just wrong for him to do that. And I wouldn't want to be subject to those kind of whims of a police officer to arrest person for what he arrested him on. I don't have much else to say about that. The state did make the point that, well, when was he under arrest? Quite clearly he was under arrest when he turned from Thornton Street onto Jefferson Street. Judge Polito asked him, he says, when did you turn on your lights? He says, I turned them on when he turned on to Jefferson Street. That's when he proceeded to stop him. The state makes the argument that, well, when was he seized? Well, he was seized when he was stopped. You can see the videotape. I was I was amazed. You see Murphy getting out of the vehicle and he's got his head over, hands over, like he's a POW on the History Channel. And he's definitely seized and under arrest. And Brunzee says he ain't going anywhere. He says that quite clearly on the record. So I'm submitting to you that the stop was unconstitutional. It was not based on probable cause because the police officer, the video just doesn't back it up. My case is the video. And I don't think I think Judge Polito was confused and conflicted by the video. And it was his opinion that it doesn't matter anyhow until you can stop anybody for a Terry stop. I submit that's not you just can't stop of any vehicle at any time on a Terry stop and justify it with some sort of violation, alleged violation of the traffic code. So is there any more questions? Thank you, Mr. With respect to the aspect about the motion for directed verdict, I have made several arguments and I briefed on that. I'm not going to argue those this morning. I would like to, I think best use my time in addressing what I believe is the real, which is the legal issue in this case, which concerns the stop. The basis to me, I think the issue before this court really is really comes down to the credibility question, because in this particular case, what do we have? We have a DVD that as he says, I view it, I believe is inconclusive as to whether or not it really shows what the officer said he saw. On the other hand, we have two officers testifying, Brunsey and McDaniel. Okay. They both testified to seeing the defendant's vehicle, the tires cross a centerline or cross into lanes and basically was in two lanes. One part of the truck was in one side. The other part of the truck was in the other side of the traffic. Mr. Genetovic, regarding Officer Brunsey's testimony, how is it that he could observe something that can't be observed on the video, considering that it is dark and the video ends, which you can see past that illumination. How could he see past the headlights of the vehicle and something that isn't captured on that video? Well, metaphysically I can't answer that. Well, I will take an answer as what I saw on the video. When I look at the video, considering the time of night, considering the illumination of the car and considering the fact that you're videotaping and the spatial distance between, okay, you cannot tell where the truck is. Okay. You cannot tell whether or not the truck has in fact crossed the line or not. There's no stark movement. There's no, okay. As well as the fact that when you look at it and you can see, you can understand Judge Pulido's confliction here with respect to, well, whose vehicle turned there? It's very difficult to discern that again, based on the spatial distance between the two. Okay. Now, yes, granted, indeed, he talked about what officer Brunsey said he saw and what the video shows. Okay. The fact that you cannot actually discern from the video whether or not where that truck was does not mean that Brunsey didn't see that. And I guess to a large thing that was there, quite possibly, I would be the appellant and Mr. Callan would be the appellee in this case. But we have officer McDaniel who was at Thornton, perpendicular to the street that was on, looking down and basically supplying the same testimony, seeing the same thing. We have that corroboration. I cannot explain metaphysically exactly with the lights and what you can and can't see. All I know is from what I viewed on that tape, I cannot actually tell where that vehicle was at any point in time with respect to the roadway and the lines and everything else, simply because by the time he decides to turn his car around, Murphy's vehicle is so far down that it takes him that bit to take and catch up. You cannot see. Okay. Now, does the fact that he claims he can see and the video doesn't show it? I think it's possible. I think you can take and see something that maybe the camera can't not necessarily pick up. But again, the state finds the corroboration for McDaniel, who was stationary and who was there as the car was approaching, identified the same thing. I think that adds into and that's the reason why this becomes a credibility issue. Because I mean, as far as him making the U-turn, that wouldn't make any difference because he doesn't testify. That's when the straddling occurred. He has a sort of a specific area. And McDaniel's testimony is confusing because he says that it happened right in front of him. But that really couldn't be possible because of where he's sitting, that that vehicle couldn't be right in front of him. Well, I mean, you know, I can't, again, how we describe things. Technically speaking, if you're here and a car is coming towards you, is not the vehicle in front of you? When you say in front of you, are you talking about he's at the mirror or here? You know, the vehicle, you're in front of me, right? The bailiff and the clerk aren't in front of me. But if you look to the side of me now, they're in front of me. You're to the side of me. Right. Well, if McDaniel's sitting at the intersection and he's looking down the street, the car's in front of him, not on the side of him. And the only way he's going to be able to see the vehicle coming toward him and be able to justify is if he's looking at it. So the fact that he described it, that it was in front of him, is his way of describing it. I can't. With respect to the thing I want to take and clear up here, with respect to the basis for the stop, counsel talks about the fact that he'd have probable cause. I think if you take a look at the Supreme Court case in Peeble v. Hackett, again, the fact that the officer describes this as improper lane usage, I don't necessarily, I don't necessarily think that he's necessarily describing, quote unquote, a traffic violation, a crime. We learned from Hackett that basically there are two ways to look at this. Probable cause, if an officer has, if an officer sees a violation in front of him being committed, he has probable cause to arrest for that probably the easiest example I can give is speeding. You're speeding, you get clocked, boom, you've got probable cause. It's not reasonable suspicion. You've got probable cause. It's 55, he's going 85. That's probable cause to arrest. In a situation like this, what Hackett said is, well, wait a second, under the improper lane usage, it's not only do you have to cross the line, but you need this other aspect, which is that there was nothing in the roadway that caused the individual to have to do that. Because that's what improper lane usage is all about. Well, when the officer says, I saw the tires cross the center line, you know, I feel I have improper lane usage. Well, to an extent, yes, he's using the improper lane usage, not in the technical term of a violation, but the fact that the guy's tires crossed, and that's how I describe it. Crossing the center line, not keeping your vehicle within its lane of traffic, right, provides what? It provides a reasonable suspicion. That something else is going on. It's reasonable, it's articulable, it's factual, you can point to it. When we have probable cause, the standard for probable cause, probable cause to arrest indicates one, a crime has been committed, and two, the individual has committed it. That's probable cause to arrest. Reasonable suspicion is not even close to that. Reasonable suspicion simply says, I have articulable facts to believe that criminal activity might very well be at fault. And this guy is kind of, we've crossed over the line, he was there for such and such a length of time, it's all over. Basically, I have a reasonable suspicion to stop the vehicle to check it out. That's what we have in this case. We don't necessarily have probable cause because I don't think Brunson testified in fact, well, there was nothing obstructing, there was nothing obstructing. What we have here is we have a reasonable articulable suspicion of potential criminal activity. And we are able to take and check it out. Hackett allows that. Hackett's statement that the distinction between the two standards may or may not be relevant, depending upon the facts of the case under consideration and the vehicle code at issue. I submit what that stands for is the fact that in the improper lane usage situation, unless the officer gives both aspects of that, you have probable cause. So in this vehicle code violation, in order for there to be probable cause, the officer has to include both aspects. Crossing the center line, and there was no reason for him to do that. If he just says crossing the center line, that in and of itself is sufficient for a reasonable articulable suspicion for a Terry stop. And that's what was conducted. And that's the reason why Judge Polito, I think, with respect to the motion for a directive verdict, he erred because holding that probable cause standard, I think he actually missed the boat on that. And I think he really needed to take and really analyze it under Terry. And when you do that, basically the directive verdict motion probably should have been granted. But even if not, he ultimately got it right at the end when he said, well, this is a Terry stop anyway, because that's all that this was. This was nothing more than a Terry stop that once he stopped him, detected the odor of alcohol, and we go on from there and then we get the DUI. So when properly analyzed what this case really comes down to, it's a credibility question. Judge Polito, as you pointed out, Judge Justice Carter, Judge Polito implicitly made credibility determinations, finding the officers credibility, finding the officers to be credible. And even though the tape didn't necessarily show what they testified to, the fact is that because it is inconclusive, he chose to believe the officers. And I think what also could very well have factored into this, the defendant didn't testify. Now, I realize defendants don't have to testify. Okay. But a lot of situations, especially in a motion to suppress, usually defendants going to stand and testify saying, I wasn't doing anything. I didn't do this, I didn't do that. Defendant never testified. We can't consider that. Well, I think, well, first of all, in a motion to suppress, nothing that is basically testified to anyway can be used at the trial. So, so incrimination aspects and stuff like that. We can't consider any arguments about the fact that the defendant... I think Justice Carter is politely saying we won't consider that. Well, that's, that's, that's, but again, let me speak for my learning time. Well, I'm glad that you can interpret Justice Carter. Yep, I tried to. But, you know, and that's all fine and well, because, you know, we really don't take any of that, but we don't really have any evidence on the other side to take to say that it didn't happen. And that's the point what I'm talking about. But isn't that the entire genesis and history of why we have video cameras and why we videotape interrogation, certain interrogations, confessions is to, and not necessarily to even, you know, embrace Mr. Callan's argument of not on the square, but mistake or things that perhaps are that the, the idea and the justice was that, you know, these just are going to take photos and they're demonstrated for evidence of events as they occurred and aren't subject to the different interpretation or recollection or mistake. Isn't, isn't that the whole idea of the videotape? It's kind of sort of a whole idea, but then again, it's not the end all. It's not, it's somewhat, when I say ironic that your honor asked the question, because I was thinking to myself as I was preparing for this, I'm going, what in the world did we take and do back in the seventies and early eighties before we had BACs and we had cameras and we had all this stuff. How did we ever convict anybody? Everybody looks for this definitive aspect of scientific evidence and we got to have pictures. You know, yes, this helpful. Okay. And in this case, if it was more definitive, if it was actually a lot clearer, if it actually showed what the conclusion that defense council was trying to draw from that, if it was that clear, okay, again, chance likely we'd be on opposite sides of the bench right now, but the thing is it's not. And that's the reason why this becomes a credibility question. This becomes a situation with the trial judge chose to leave because he had really nothing definitive that contradicted the officer's testimony. And that's the reason why in this case, if you, when you apply the right legal standards, when you separate out probable cause, reasonable suspicion has nothing to do with probable cause, probable cause or facts, crime and defendant committed. If you put in the right, plug in the right legal standard question comes down to one of credibility. Has the defendant established an appeal that the trial judge's factual decision is manifestly erroneous. I submit he did not. The court finds otherwise that's, you know, the court's prerogative, but I don't think that the defendant has established that the trial judge's factual determinations are manifestly erroneous. And that's what I think this case comes down to plain and simple. If there are any other questions. Questions. Thank you. Thank you, Mr. Callen. When I was sitting here listening to Mr. Dubednik's argument, I was thinking I would go back to my office. I'll get a copy of the United States constitution. I'll excise out the fourth amendment, have some company make mass copies of it, and we'll use it for Kleenex because what he has said basically eliminates probable cause when you're talking about vehicles, motor vehicles, clearly the Hackett case, it was a slight infringement on the center line. Justice O'Reilly, I know you're familiar with the Hackett case. Painfully. In this case, if you believe Borenzi, which I don't, but if you believe him, half of the vehicle is in one lane, half of the vehicle is in the other lane. That is clearly improper lane usage. And I don't know if you can say, well, it's proper lane usage that's, oh, if you buy Mr. Dubednik's argument, anything is probable, is suspicious. Anything will justify a Terry stop if you can somehow hitch it to the motor vehicle code. No, it's probable cause, but I don't really think that that really is the gravamen of this case. The gravamen of this case is all the internal inconsistencies with Borenzi's testimony, McDaniel's testimony, the videotape, which doesn't corroborate any of it. And I'm submitting to you that you can sum up Borenzi's testimony as follows. Who are you going to believe, me or your allies? Thank you. In opening remarks, you indicated to us that, what street is it? Thornton Street? Thornton Street, yes. It should be First Street. Well, Thornton Street would be First Street if it was given a number. So the gas station is at 324 South State Street, which is the fourth street, then third, second, and then Thornton. Now, one other thing that I wanted to mention. Let me follow up on my question before. So do you disagree with Officer Borenzi's testimony that your client turned on Thornton? Because you argued that. I, that's what I was going to say, but I forgot to mention, I'll mention it right now. I'm glad you reminded me. I was going to walk away and forget something. I'd be walking right back to you.  Do I agree my client turned on Thornton? Yes, my client did turn on Thornton. Okay. Judge Polito looked at the videotape and he replayed it and he replayed it and he replayed it. His lying eyes saw your client turn on second. So second, second street. If that's the case. If Judge Polito looks at the same videotape and draws a different conclusion, when he says he's confused by the videotape, couldn't he be referring to, he's confused about whether your client turned on Thornton or second? Well, if he turned on second street, if I don't, Judge Polito, that's the point I wanted to make to the panel here. Judge Polito did make that, he says, I, to me, it looks like he turned on second street. If that's the case. When Borenzi says no, he turned on Thornton street. And you state that. He had to turn on Thornton street. But did he turn on Thornton street before the video was there? If that's not, if that's not Murphy's vehicle that turns on the Thornton street or turns on the second street, if that's Murphy's vehicle, then it would be impossible for him to have a strappable lane in the 100 block. See that? You see the second street's here, Thornton's here. This is the 100 block. He turned on second street and he never went into the 100 block. Yes. So that tells me that there was a vehicle between the officer and then there was a vehicle that turned and actually he's looking at your client ahead of that vehicle. Well, that vehicle was head of my client down the road and see multiple vehicles ahead of you. Angle of the video camera may have blocked what the officer could see. The, the, the officer testified that that was Murphy's vehicle on the video that turned on the Thornton street. If that's not Murphy's vehicle, then his whole testimony falls. And there wasn't your point based on my question now, and I'll leave you alone. Well, one, there was one vehicle that did pass through, uh, Thornton street and keep on going. Then Murphy vehicle either turned on second street or Thornton street. He had to turn on Thornton street because that's where it was turned out Jefferson from Thornton. But, uh, anyway, have I answered all your questions? You know, I very well could be. That's why, that's why I took this case up on appeal because the video doesn't square with the testimony, whether you buy Palito's interpretation, if you buy judge Palito's interpretation, you know, I, I, you should reverse them. Thank you. Thank you, Mr. County. Thank you both for your arguments here today. Uh, this matter will be taken under advisement and a written decision will be issued as soon as possible. And right now we will take a recess for a panel change.